IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZS ASSOCIATES, INC. <br><br>and<br><br>ZS ASSOCIATES INTERNATIONAL, INC.,<br><br>      Plaintiffs,<br><br>      v.<br><br>SYNYGY, INC.<br><br>      Defendant. | Civil Action No. _____<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs ZS Associates, Inc. ("ZSA") and ZS Associates International, Inc. ("ZSAI") (collectively, "ZS") hereby assert the following claims against Defendant Synygy, Inc. ("Synygy"), by alleging the following:

***The Parties***

    1.    Plaintiff ZSA is a private corporation, organized under the laws of Illinois, with its headquarters located at 1800 Sherman Ave., Suite 700, Evanston, Illinois 60201.

    2.    ZSA was founded in 1983 by two professors of marketing from the Kellogg School of Management at Northwestern University, named Andris A. Zoltners, PhD and Prabhakant Sinha, PhD.

13872397.2

3.      Professor Zoltners has been a member of the faculty at Northwestern for more than 30 years, has co-authored a series of books on sales force management, written more than 40 academic articles, and edited two books on Marketing Models.

4.      His colleague, Dr. Sinha, is a former Associate Professor of Marketing, Kellogg School of Management at Northwestern and co-authored many articles and books with Professor Zoltners. They founded ZSA based on work they conducted at Northwestern, applying their academic studies of sales and marketing dynamics to industry.

5.      Twenty-six years later, ZSA with its affiliates employ more than a thousand individuals and assists primarily commercial organizations with a wide variety of sales and marketing issues such as sales force design and deployment; incentive compensation design and administration; customer targeting, marketing strategy, measurement and evaluation; outsourced service and capability building; business intelligence; market research; forecasting; pricing; sales force training and customer communication.

6.      Plaintiff ZSAI is a separate corporation, affiliated with ZSA, and also organized under the laws of Illinois. ZSAI also has its headquarters at 1800 Sherman Ave., Suite 700, Evanston, Illinois 60201.

7.      Among other things, ZSA and ZSAI provide global incentive compensation consulting, administration and software services ("IC Services"). IC Services is a key element in directing and motivating a company's sales force through an efficient and accurate administration of incentives and goals.

8.      Upon information and belief, Defendant Synygy is a Pennsylvania corporation with its principal place of business located at 2501 Seaport Drive, Chester, Pennsylvania 19013.

9. Synygy was founded many years after ZS, in 1991.

10. Upon information and belief, Synygy's founder, President, and CEO—Mark A. Stiffler ("Stiffler")—attended two seminars taught by Professor Zoltners at Northwestern on incentive compensation in the 1990's.

11. Today, ZS and Synygy compete in providing certain incentive compensation consulting, administration and software services. ZS also provides other sales and marketing services, which Synygy generally does not offer, to some of the same client companies to which Synygy provides incentive compensation services.

*Jurisdiction and Venue*

12. ZS brings these claims pursuant to this Court's subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1367. This Court has original federal question jurisdiction over ZS's Lanham Act claim under 28 U.S.C. § 1331. This Court has diversity jurisdiction over ZS's state law claims under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 (exclusive of interest and costs) and ZSA and ZSAI are citizens of Illinois, while Synygy, upon information and belief, is not a citizen of Illinois. This Court also has supplemental jurisdiction over ZS's state law claims under 28 U.S.C. § 1367 because they are intertwined with and arise from the same common nucleus of operative fact as ZS's Lanham Act claim.

13. The Court has personal jurisdiction over Synygy because it is a Pennsylvania corporation with its principal place of business located at 2501 Seaport Drive, Chester, Pennsylvania 19013.

14. Accordingly, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a).

## Count I: Defamation

15. ZS repeats the allegations set forth in all of the foregoing paragraphs of this Complaint as though set forth at length herein.

16. Synygy filed an Amended Complaint in *Synygy, Inc. v. Novo Nordisk, et al.*, Civil Action No. 07-3536 (the "Related Case") on August 5, 2009 alleging, *inter alia*, that ZSA and ZSAI committed various torts, which purportedly harmed Synygy.

17. Synygy, through Stiffler, made the following statements to the public on August 6, 2009:

> Synygy created the market for sales compensation management (SCM) software and services more than 18 years ago. We have invested many years and a lot of money in product development, which led to Synygy creating the SCM software that has propelled our success year after year. Our intellectual property is a very valuable asset and we are firmly committed to protecting it.
>
> The lawsuit we filed today contends that ZS knowingly copied our software and other confidential information with the intent to use our intellectual property in direct competition with us. Our position is that ZS continues to use our software and other confidential information, causing us to lose substantial revenue, profit, and company valuation, while they profit from its use. There is no way we can fully recover what we have lost from what we contend was deliberate and malicious misconduct, but we urge the Court to restrain ZS from continuing to infringe on our intellectual property and to award Synygy damages as the Court deems appropriate.

18. Stiffler made these statements in his capacity as Synygy's President and CEO and on behalf of Synygy.

19. By issuing the press release, Synygy made, adopted, published, disseminated, distributed, and repeated all of these statements.

20. Moreover, upon information and belief, Synygy maliciously and intentionally published and/or directed certain third parties to publish and distribute these statements to the

- 4 -

public through various means, such as the Internet and press releases. A true and correct copy of Synygy's press release, which was downloaded from Synygy's website on August 19, 2010, is attached as Exhibit A.

21.     Upon information and belief, Synygy widely distributed these defamatory statements to the public through the Internet and various media outlets, including but not limited to Reuters®, Yahoo!® Finance, and Intellectual Property Today. *See* Exhibits B, C & D.

22.     Synygy's statements and implications are materially false, misleading, and defamatory.

23.     In particular, and among other things, the defamatory statements and implications falsely assert that ZS engaged in "deliberate and malicious misconduct" in its business practices by unlawfully using Synygy's software, intellectual property, and other confidential business information to compete with Synygy.

24.     Moreover, the defamatory statements and implications falsely suggest and imply that Synygy was the market innovator and that ZS's products and services are knock-offs of products and services that Synygy developed. The defamatory statements and implications also falsely suggest and imply that ZS infringed Synygy's intellectual property and improperly won over business and clients from Synygy as a result.

25.     Synygy's statements and implications about ZS are defamatory because they tend to harm the business reputation of ZS so as to lower ZS in the estimation of the community; naturally deter third persons from associating or dealing with ZS, and reduce demand for ZS's goods and services.

26. Synygy's statements and innuendos about ZS are also defamatory because they imply that ZS has acted in a way that is contrary to proper, honest, and lawful business conduct.

27. Synygy made these defamatory statements about ZS with the intention to harass ZS and tarnish the business reputation of ZS so as to lower ZS in the estimation of the community and in the marketplace for ZS's goods and services.

28. Synygy adopted, published, disseminated, distributed, and repeated the defamatory statements about ZS with the intention to harass ZS and tarnish the business reputation of ZS so as to lower ZS in the estimation of the community and the marketplace for ZS's goods and services.

29. Synygy's statements expressly refer to "ZS" by name and are collectively about ZSA and ZSAI because they are both named as defendants in Synygy's Amended Complaint in the Related Case, as Synygy references the Amended Complaint in the press release and otherwise. Furthermore, upon information and belief the recipients of the defamatory statements understood that the statements were intended to be applied to both ZSA and ZSAI.

30. In a letter to Stiffler and Synygy, dated November 20, 2009, ZS informed Stiffler and Synygy of the harm to ZS from dissemination of the statements about ZS. *See* Exhibit E. Rather than taking prompt remedial action to mitigate the injury to ZS that disseminating the statements caused—and continue to cause—ZS, Synygy has repeated them, and has refused to retract them, to cease publishing them, or to take measures to prevent others from publishing them.

31. ZS is neither a public official, nor a public figure, nor do Synygy's statements touch upon matters of public concern.

32. Synygy made, adopted, published, disseminated, distributed, and repeated the defamatory statements about ZS with actual malice, knowing at the time that they were false, and/or with reckless or negligent disregard for their truth or falsity.

33. Synygy's making, adoption, publication, dissemination, distribution, and repetition of the defamatory statements have caused, and continue to cause, ZS to suffer general harm because ZS's reputation actually has been adversely affected by the defamatory statements and their distribution. Accordingly, ZS suffered, and continues to suffer, harm to its reputation, loss of good will, and reduced demand for its goods and services.

34. Synygy's making, adoption, publication, dissemination, distribution, and repetition of the defamatory statements have also caused, and continue to cause, ZS to suffer special harm—including, but not limited to pecuniary losses, loss of potential revenue, good will, and business opportunities with current and prospective clients.

35. Synygy's making, adoption, publication, dissemination, distribution, and repetition, of the defamatory statements about ZS have further injured the reputation of ZS in the marketplace and have harmed ZS's business, resulting in further pecuniary losses, loss of good will, and loss of potential business opportunities with current and prospective clients.

36. Moreover, Synygy's making, adoption, publication, dissemination, distribution, and repetition of the statements constitute defamation *per se* because they accuse ZS of "deliberate and malicious misconduct" in its business practices. In particular, the statements ascribe to ZS conduct that would adversely affect its fitness for the proper conduct of lawful business.

37. Upon information and belief, the recipients of the defamatory statements about ZS understood, and continue to understand, the meaning of the statements to be defamatory.

38. The defamatory statements about ZS were not privileged, and Synygy's publication, dissemination, distribution, and repetition of the defamatory statements about ZS were not privileged.

39. To the extent the defamatory statements about ZS were privileged, any applicable privilege was abused.

40. To the extent Synygy's publication, dissemination, distribution, and repetition of the defamatory statements about ZS were privileged, any applicable privilege was abused.

41. Accordingly, ZS suffered, and continues to suffer, direct pecuniary losses and loss of good will as the result of Synygy's publication, dissemination, distribution, and repetition of the defamatory statements valued in excess of $150,000 exclusive of interest and costs.

### Count II: Commercial Disparagement

42. ZS repeats the allegations set forth in all of the foregoing paragraphs of its Complaint as though set forth at length herein.

43. Stiffler's statements about ZS constitute disparaging statements of fact or opinion about ZS's products, services, and/or business practices that are untrue and incorrect.

44. Synygy's adoption, publication, dissemination, distribution, and repetition of the statements about ZS constitute disparaging statements of fact that are untrue and incorrect.

45. Synygy made, adopted, published, disseminated, distributed, and repeated the disparaging statements, knowing that they were untrue and incorrect, or did so with reckless or negligent disregard for their truth or falsity.

46. Synygy knew or should have known that its making, adoption, publication, dissemination, distribution, and repetition of these disparaging statements would likely result in financial harm and pecuniary loss to ZS because current and potential customers would rely on such public statements when deciding whether to purchase products and services from ZS.

47. Synygy's intentional making, adoption, publication, dissemination, distribution, and repetition of these disparaging statements were motivated by ill will toward ZS and are not privileged under the law.

48. Synygy's making, publication, dissemination, distribution, and repetition of these disparaging comments have reduced the marketability of ZS's goods and services because current and/or potential ZS customers actually relied on the truth of the statements in deciding not to conduct business with ZS.

49. Accordingly, ZS suffered, and continues to suffer, a direct pecuniary loss and loss of good will as the result of Synygy's disparagement valued in excess of $150,000 exclusive of interest and costs.

### Count III: Violation of the Lanham Act

50. ZS repeats the allegations set forth in all of the foregoing paragraphs of its Complaint as though set forth at length herein.

51. Synygy's reiteration, adoption, publication, dissemination, and distribution of Stiffler's statements about ZS and Synygy constitute false and misleading descriptions and misrepresentations of fact about both ZS's and Synygy's products and services.

52. Synygy's press release and wide-ranging distribution of the false and misleading descriptions about both ZS's and Synygy's products and services to various media outlets and

over the Internet are commercial speech, advertisement, and/or promotion under the Lanham Act.

53. Synygy admits in its Amended Complaint in the Related Case that ZS and Synygy are direct, commercial competitors.

54. Synygy's publication, reiteration, and wide-ranging distribution of Stiffler's statements in a press release, through various media outlets, and over the Internet was designed to influence customers to buy Synygy's products and services and spurn ZS's competing products and services.

55. Synygy's publication, reiteration, dissemination, and wide-ranging distribution of Stiffler's false and misleading statements actually deceived and/or tended to deceive ZS's current and potential customers into believing that ZS provides inferior products and services compared to Synygy and that ZS engages in "deliberate and malicious misconduct" in its business practices by unlawfully using Synygy's software, intellectual property, and other confidential business information to compete with Synygy.

56. Synygy's deception was material in that it was likely to influence customer's purchasing decisions.

57. Both ZS's and Synygy's products and services described in the press release travel through interstate commerce.

58. ZS has been injured by Synygy's deception through loss of sales and good will.

WHEREFORE, Plaintiffs ZSA and ZSAI pray that the Court enter judgment in their favor and against Defendant Synygy as follows:

(a) Enjoin Defendant Synygy, Inc. from continuing to publish or disseminate the defamatory statements identified in this Complaint, and from otherwise defaming or commercially disparaging Plaintiffs;

(b) Award Plaintiffs ZSA and ZSAI general compensatory and consequential damages, including damages for loss of business relations, damages for loss of growth opportunities, damages for loss of company valuation, damages for loss of reputation and damages for loss of all benefits as a result of the actions of Defendant Synygy, Inc.;

(c) Award Plaintiffs ZSA and ZSAI such punitive damages for the wrongful conduct of Defendant Synygy, Inc. as the trier of fact deems just and proper;

(d) Grant Plaintiffs ZSA and ZSAI costs, disbursements, and reasonable attorneys' fees; and

(e) Grant Plaintiffs ZSA and ZSAI such additional legal and equitable relief as this Court deems just and proper under the circumstances.

Date: August 20, 2010

Respectfully submitted,

Diane Siegel Danoff
Joseph R. Heffern
Elisa T. Wiygul
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808

*Attorneys for Plaintiffs,*
*ZS Associates, Inc. and*
*ZS Associates International, Inc.*